**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION**

AUG 10 2026 PM3:00
FILED - USDC - FLMD - TPA

BENEDICT MOHIT, Individually and as
Trustee for Gita Nagassar Mohit Family Trust,

    Plaintiff,

v.

CITY OF HAINES CITY, FLORIDA,

    Defendant.

_____/

Case No.: _8:26·CV-2318-JLB-SPF_

**COMPLAINT FOR DAMAGES**

42 U.S.C. § 1983 — CIVIL RIGHTS VIOLATION

N.P.

# TABLE OF CONTENTS

I. INTRODUCTION ........................................................................................................6

    A. Nature of the Action.............................................................................................6

    B. The Farm ...............................................................................................................7

    C. Florida's Statewide Agricultural and Environmental Regulatory Framework ...............8

    D. Federal Constitutional Injury ...........................................................................10

    E. Prior Proceedings...............................................................................................11

II. JURISDICTION AND VENUE........................................................................................11

III. PARTIES ..............................................................................................................12

    A. Plaintiff................................................................................................................12

    B. Defendant ...........................................................................................................12

IV. FACTUAL BACKGROUND...........................................................................................12

    A. Acquisition and Operation of the Farm............................................................13

    B. Statutory Recognition and Agricultural Classification of the Farm...................14

    C. Florida's Statewide Agricultural and Environmental Regulatory Framework .............14

    D. Judicial Recognition of the Existing Farm........................................................15

    E. Defendant's Admissions Concerning Its Land Development Regulations ...................16

    F. Defendant's Legislative and Regulatory Scheme..............................................18

    G. Defendant's Failure to Implement § 163.3163, Fla. Stat.,...............................18

    H. Defendant's Resolution 15-1153 and Its Expiration........................................19

    I. Continuing Enforcement and the Resulting Regulatory Conflict........................20

    J. Finding 4 and the Issues Presented in the 2014 State Action...........................21

    K. Prior Federal Litigation.....................................................................................25

    L. State-Created Property Interests .......................................................................27

V. FLORIDA STATUTORY FRAMEWORK...........................................................................28

    A. Development Definitions ....................................................................................28

    B. Agricultural Definitions .....................................................................................29

    C. First Independent Statutory Limitation — Definitional Exclusion.....................30

    D. Second Independent Statutory Limitation — State Prohibition to Adopt ...................31

    E. Third Independent Statutory Limitation — Agricultural Classification Protection.......34

    F. Fourth Independent Statutory Limitation — Agricultural Acknowledgement...............35

    G. Fifth Independent Statutory Limitation — Apiculture and Aquaculture...................36

    H. Sixth Independent Statutory Limitation — Farm Buildings and Equipment...............37

    I. The Illusory Escape .................................................................................39

    J. Continuing Economic Injury .................................................................41

VI. PRIOR STATE PROCEEDINGS.................................................................42

COUNT I — Regulatory Taking .....................................................................43

COUNT II — Violation of Procedural and Substantive Due Process ....................46

DEMAND FOR JURY TRIAL .........................................................................48

# TABLE OF AUTHORITIES

**Cases**

*14269 BT LLC v. Village of Wellington*, 240 So. 3d 1 (Fla. 4th DCA 2018) ..........................38

*Board of Regents v. Roth*, 408 U.S. 564 (1972).........................................................27

*Greenwood v. Oates*, 251 So. 2d 665 (Fla. 1971)......................................................29

*J-II Investments, Inc. v. Leon County*, 908 So. 2d 1140 (Fla. 1st DCA 2005) ........................32

*Love PGI Partners, L.P. v. Schultz*, 706 So. 2d 887 (Fla. 2d DCA 1998)..............................24

*Lucas v. South Carolina Coastal Council*, 505 U.S. 1003 (1992)......................................44

*Mohit v. City of Haines City*, No. 8:18-cv-01775 (M.D. Fla.)........................................25

*Mohit v. City of Haines City*, No. 8:23-cv-02025 (M.D. Fla.)........................................25

*Mohit v. [Individual City Officials]*, No. 8:20-cv-00813 (M.D. Fla.)................................25

*Penn Central Transportation Co. v. City of New York*, 438 U.S. 104 (1978) ..........................44

*Schultz v. Love PGI Partners, L.P.*, 731 So. 2d 1270 (Fla. 1999) ...................................24

*Straughn v. Tuck*, 354 So. 2d 368 (Fla. 1977) .....................................................29

*Wilson v. Palm Beach County*, 62 So. 3d 1247 (Fla. 4th DCA 2011) ...................................20

**Constitutional Provisions and Statutes**

U.S. Const. amend. V.............................................................................1, 43

U.S. Const. amend. XIV .........................................................................1, 46

Fla. Const. art. I, § 2.............................................................................27

Fla. Const. art. I, § 9.............................................................................27

Fla. Const. art. VII, § 4(a)...............................................................29, 34, 40

Fla. Const. art. VIII, § 2(b) ...............................................................6, 10

42 U.S.C. § 1983 ............................................................................ passim

28 U.S.C. § 1331................................................................................11

28 U.S.C. § 1343(a)(3)–(4).....................................................................11

28 U.S.C. § 1391(b)............................................................................11

33 U.S.C. §§ 1251 et seq.....................................................................9, 14

33 U.S.C. § 1329...............................................................................32

Fed. R. Civ. P. 38(b).........................................................................48

§ 163.3162, Fla. Stat. ................................................................... passim

§ 163.3163, Fla. Stat. ..............................................19, 26, 35, 36, 39, 41, 43, 46

§ 163.3164, Fla. Stat. ...........................................6, 24, 28–31, 39–40

§ 163.3194, Fla. Stat. ...........................................................6, 7, 34, 40

§ 166.021, Fla. Stat. ...................................................................................6, 10

§ 166.033, Fla. Stat. ...............................................6, 7, 24, 28–31, 39–40

§ 193.461, Fla. Stat. ................................................................................ passim

§ 380.04, Fla. Stat. ....................................................................................28, 31

§ 403.067, Fla. Stat. ...............................................................10, 14, 15, 18, 32

§ 586.10, Fla. Stat. ..........................................................................................36

§ 586.055, Fla. Stat. .................................................................................6, 36

§ 597.002, Fla. Stat. .............................................................................6, 36, 37

§ 597.004, Fla. Stat. ...............................................................................36, 37

§ 604.40, Fla. Stat. ..........................................................................6, 7, 8, 37–39

§ 604.50, Fla. Stat. .............................................................8, 9, 16, 18, 20, 37–39

§ 823.14, Fla. Stat. ................................................................................ passim

# I. INTRODUCTION

## A. Nature of the Action

This is a civil-rights action arising under 42 U.S.C. § 1983. Plaintiff, individually and as Trustee, manages and operates a farm and conducts farm operations, as those terms are defined in §§ 163.3162(2) and 823.14(3), Fla. Stat.

Plaintiff alleges that Defendant adopted, maintains, and continues to enforce Land Development Regulations, Resolution 15-1153, and related ordinances, policies, and practices that prohibit, restrict, limit, or require prior municipal approval for qualifying farm operations notwithstanding Florida's statewide statutory framework protecting agriculture and limiting municipal authority.

Plaintiff further alleges that the central question presented by this action is not whether some subsequent statute subtracts authority from Defendant's pre-existing zoning or regulatory power, but whether that authority ever extended to the agricultural activities at issue in the first place. Article VIII, section 2(b) of the Florida Constitution grants municipalities governmental powers only "except as otherwise provided by law," and § 166.021, Fla. Stat., implements that same constitutional limitation, confirming that the qualification is built into the delegation of municipal authority itself rather than operating as a later subtraction from otherwise existing powers.

Section 163.3162(3)(a), Fla. Stat., confirms this principle directly. It forecloses not merely one form of municipal authority but "any of its powers" to adopt such enactments, leaving no residual source of municipal authority, however characterized, capable of supporting them. Sections 166.033(6), 163.3164, and 380.04(3)(e) (definitional exclusion); §§ 823.14(6) and 163.3162(3)(a) (withdrawal of authority to adopt); §§ 193.461 and 163.3194(5) (protection of agricultural classification); §§ 586.10, 586.055, 597.002, and 597.004 (apiculture and aquaculture); §§ 604.40 and 604.50 (farm equipment and farm buildings); and § 163.3163 (Agricultural Land Acknowledgment Act), Fla. Stat., each independently define what "otherwise provided by law" means. Accordingly, Defendant never possessed legislative authority to adopt ordinances, regulations, resolutions, rules, or policies prohibiting, restricting, regulating, or requiring municipal approval for the agricultural activities and farm operations those statutes protect.

6

Plaintiff alleges that Florida law distinguishes land qualifying for agricultural classification under § 193.461, Fla. Stat., from all other land. Land qualifying for agricultural classification is subject to Florida's comprehensive statewide statutory framework governing agriculture, while land not qualifying for agricultural classification generally remains subject to municipal zoning and land-development regulation. Through statutes including §§ 166.033(6), 163.3162, 163.3194(5), 193.461, 380.04(3)(e), 604.40, 604.50, and 823.14, Fla. Stat., Florida law limits, withdraws, preempts, or otherwise defines the scope of municipal authority over qualifying agricultural activities.

The November 30, 2015 Order entered in the initial state-court proceedings recognized this same statutory distinction. As discussed below, the Circuit Court separately addressed activities that municipalities may regulate through local ordinances applicable to residentially zoned property and the statutory protections afforded to land classified as agricultural under § 193.461. Plaintiff's Farm received agricultural classification for each tax year from 2022 through 2026 and therefore falls within the statewide statutory framework governing qualifying agricultural activities rather than the ordinary municipal land-development regulatory framework applicable absent those statutory protections.

Plaintiff does not seek a variance, rezoning, conditional-use approval, development permit, development order, or any other discretionary municipal approval. Rather, Plaintiff challenges Defendant's authority to adopt, maintain, and enforce Land Development Regulations, ordinances, resolutions, and related policies requiring municipal approval for the Farm and its farm operations to the extent Florida law limits, withdraws, preempts, or otherwise excludes municipal authority. This action concerns the existence and scope of Defendant's legislative authority, not the denial of a discretionary land-use application.

## B. The Farm

Plaintiff, individually and as Trustee, manages and operates a twenty-acre commercial Farm located within the municipal boundaries of the City of Haines City. Since 2012, the Farm has been devoted to good faith commercial agricultural use of the land and has received agricultural classification pursuant to § 193.461, Fla. Stat., for every tax year since 2013. (Exhibit A.) In proceedings culminating in the May 26, 2015 Order, the Tenth Judicial Circuit Court referred to the Property as Plaintiff's "existing farm." (Exhibit B.) In subsequent proceedings, the

7

Circuit Court likewise referred to Plaintiff's "ongoing operating farm since May 2012" in its August 27, 2021 Order. (Exhibit C.) Plaintiff alleges that these judicial determinations confirm the Farm's status as an existing commercial agricultural operation.

Plaintiff presently conducts farm operations through the commercial production of bermudagrass hay governed by Rule 5M-8, Florida Administrative Code. Plaintiff also intends to conduct additional farm operations authorized under Florida law and governed by applicable FDACS-administered Best Management Practices, including cattle, equine, goats, sheep, citrus, silviculture, apiculture, and aquaculture, including pond excavation for irrigation and aquaculture purposes, together with the farm buildings, support facilities, machinery, equipment, fences, and other appurtenances ordinarily associated with those operations.

## C. Florida's Statewide Agricultural and Environmental Regulatory Framework

Plaintiff alleges that the constitutional injuries described in this Complaint arise within Florida's comprehensive statewide statutory and regulatory framework governing agriculture. The following provisions define both Plaintiff's protected property interests and the limits of Defendant's municipal authority. Section 163.3162, Florida Statutes, the Agricultural Lands and Practices Act, incorporates the definitions of "farm" and "farm operation" contained in § 823.14, Florida Statutes, the Florida Right to Farm Act, and confirms that municipal authority does not extend to the qualifying agricultural lands and practices those statutes protect.

Plaintiff alleges that this framework—including agricultural classification (§ 193.461), farm equipment (§ 604.40), farm buildings (§ 604.50), apiculture (Chapter 586), aquaculture (Chapter 597), and other agricultural statutes—recognizes good faith commercial agricultural use of land; provides statutory protections for land receiving agricultural classification under § 193.461; excludes qualifying agricultural activities from Florida's statutory definition of "development"; withdraws municipal authority over qualifying agricultural activities governed by Florida Department of Agriculture and Consumer Services ("FDACS")-adopted Best Management Practices ("BMPs"); and provides additional statutory protections for farm buildings, farm equipment, and other agricultural infrastructure.

FDACS-adopted BMPs form part of Florida's statewide agricultural and water-quality regulatory program implemented pursuant to Chapters 403 and 570, Florida Statutes. This program is Florida's mechanism for satisfying its obligations under § 303(d) of the federal Clean Water Act,

33 U.S.C. §§ 1251 et seq., by regulating agricultural nonpoint source pollution. Through this framework, the Florida Legislature assigned regulatory responsibility for qualifying agricultural activities to designated state agencies and withdrew municipal authority over matters reserved to that statewide program.

Section 163.3194(5), Florida Statutes, provides that "[t]he tax-exempt status of lands classified as agricultural under s. 193.461 shall not be affected by any comprehensive plan adopted under this act" so long as the land continues to satisfy the statutory criteria. Plaintiff alleges that Defendant's Land Development Regulations implement Defendant's comprehensive plan and therefore cannot lawfully prohibit the commercial agricultural use necessary to preserve the protected tax status the Legislature declared the comprehensive plan itself may not affect.

Accordingly, when Defendant adopted its Land Development Regulations ("LDRs") in 2012, the statewide statutory framework described above had already defined and limited the scope of municipal authority over qualifying agricultural activities. Defendant therefore lacked legislative authority to adopt LDRs inconsistent with that framework. During the 2015 state-court proceedings, Defendant, through its City Attorney, acknowledged that its LDRs required revision to conform to §§ 163.3162 and 604.50, Florida Statutes. (Exhibit D at 29.) Defendant has never amended its LDRs to incorporate those statutory limitations. Instead, Defendant has continued to maintain and rely upon a legislative scheme—including LDR §§ 4.2.1, 5.6.3(D)(4), and 5.6.3(E)— that prohibits, restricts, or conditions qualifying farm operations upon prior municipal approval notwithstanding those statutory limitations.

Plaintiff alleges that §§ 163.3162(3)(a) and 823.14(6), Florida Statutes, withdraw municipal authority to adopt ordinances, regulations, resolutions, rules, or policies governing agricultural activities subject to FDACS-adopted Best Management Practices. Plaintiff further alleges that Defendant exceeded the legislative authority delegated to municipalities under Florida law by adopting LDRs, ordinances, resolutions, and related policies regulating matters reserved to Florida's statewide agricultural and environmental regulatory framework. Plaintiff alleges that Defendant's adoption of those enactments deprived Plaintiff, under color of state law, of property interests protected by the Due Process Clause, and that Defendant's continued maintenance and enforcement of those enactments deprived Plaintiff of property protected by the Takings Clause of the Fifth and Fourteenth Amendments.

9

## D. Federal Constitutional Injury

Plaintiff alleges that Defendant's legislative scheme places Plaintiff in an impossible position. If Plaintiff complies with Defendant's Land Development Regulations, ordinances, resolutions, and related policies, Plaintiff cannot conduct the farm operations necessary to maintain agricultural classification under § 193.461, Fla. Stat., implement applicable FDACS-adopted Best Management Practices, or otherwise engage in the qualifying agricultural activities Florida law protects. If Plaintiff instead conducts those activities, Plaintiff is subject to municipal enforcement, civil penalties, and continuing regulatory burdens. Defendant has thereby deprived and continues to deprive Plaintiff of property interests and other rights secured by the Fifth and Fourteenth Amendments.

Defendant's legislative scheme prohibits, restricts, or conditions agricultural activities governed by FDACS-adopted Best Management Practices, thereby interfering with Florida's legislatively established Best Management Practice program implemented pursuant to § 403.067, Fla. Stat., as part of the State's implementation of § 303(d) of the federal Clean Water Act.

Plaintiff does not challenge the denial of a development permit, zoning approval, conditional-use approval, development order, or any other discretionary land-use approval. Rather, Plaintiff challenges Defendant's adoption, maintenance, and enforcement of ordinances, regulations, resolutions, rules, and related policies requiring prior municipal approval where Florida law never delegated such authority. Plaintiff alleges that Article VIII, section 2(b) of the Florida Constitution and § 166.021, Fla. Stat., confer only those municipal powers not otherwise limited, withdrawn, preempted, or excluded by the Florida Constitution or general law. Plaintiff further alleges that Florida's statewide agricultural and environmental statutory framework defines both the scope of Defendant's municipal authority and the property interests protected by the Fifth and Fourteenth Amendments.

Plaintiff alleges that Defendant deprived Plaintiff of substantive due process by adopting legislative enactments exceeding the authority delegated to municipalities under Florida law. Plaintiff further alleges that Defendant effected an unconstitutional taking by maintaining and enforcing those enactments in a manner that deprived Plaintiff of the use and value of the Farm without just compensation.

10

### E. Prior Proceedings

Plaintiff further alleges that no prior state-court judgment actually determined that Defendant possessed legislative authority to adopt any ordinance, resolution, regulation, rule, or policy that prohibits, restricts, regulates, or conditions farm operations governed by FDACS-adopted Best Management Practices upon obtaining municipal approval. Nor did any prior judgment actually determine that Defendant may require a development permit, development order, conditional-use land development permit, rezoning, zoning approval, or similar municipal authorization as a prerequisite to conducting those farm operations or otherwise exercising rights protected by Florida's statewide agricultural and environmental framework.

The state-court decisions entered in Defendant's favor followed Defendant's characterization of Plaintiff's First Amended Complaint in the 2014 state-court action as involving "backyard farming" because it did not allege agricultural activities governed by applicable FDACS-adopted Best Management Practice Rules, as described in paragraphs 68 through 73 below. This action concerns a materially different claim: commercial farming conducted on the Farm, agricultural classification under § 193.461, FDACS-adopted Best Management Practices, and Defendant's authority to adopt, maintain, and continue to rely upon LDRs, ordinances, resolutions, and related policies regulating agricultural matters Florida law limits, withdraws, preempts, or otherwise excludes from municipal authority.

## II. JURISDICTION AND VENUE

1. This action arises under the Constitution and laws of the United States, including the Fifth and Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983. This Court has original jurisdiction under 28 U.S.C. §§ 1331 and 1343(a)(3)–(4).

2. Venue is proper in the Middle District of Florida under 28 U.S.C. § 1391(b) because Defendant City of Haines City is located in Polk County, Florida, the events giving rise to Plaintiff's claims occurred in Polk County, and the Farm is located within this District.

3. Plaintiff does not seek appellate review of any state-court judgment or relief from any state-court order. Rather, this action challenges Defendant's present LDRs, ordinances, resolutions, policies, practices, and continuing assertion of municipal authority, and seeks damages under 42

11

U.S.C. § 1983 for alleged violations of Plaintiff's rights under the Fifth and Fourteenth Amendments to the United States Constitution.

## III. PARTIES

### A. Plaintiff

4. Plaintiff Benedict Mohit, appearing *pro se*, resides in Clermont, Lake County, Florida. Plaintiff holds a Bachelor of Science degree in Agricultural Sciences and brings this action individually and as Trustee of the Gita Nagassar Mohit Family Trust, which owns the Farm.

5. Plaintiff, together with his wife, Mrs. Gita Nagassar Mohit, who holds a Bachelor of Science degree in Agronomy, manages and conducts commercial farming on the Farm and intends to conduct additional farm operations authorized under Florida law, including cattle, horses, goats and sheep, silviculture, apiculture, aquaculture, including pond excavation for irrigation and aquaculture purposes, and associated nonresidential farm buildings and agricultural improvements. The Farm has received agricultural classification pursuant to § 193.461, Fla. Stat., for every tax year since 2013. (Exhibit A.)

### B. Defendant

6. Defendant City of Haines City ("City") is a Florida municipal corporation located in Polk County, Florida. At all times material, the City acted under color of state law within the meaning of 42 U.S.C. § 1983 through its elected officials, officers, employees, attorneys, agents, departments, and other officials acting within the scope of their authority in adopting, maintaining, implementing, and enforcing the LDRs, ordinances, resolutions, policies, and practices challenged in this action.

7. The LDRs, ordinances, resolutions, policies, practices, and customs challenged in this Complaint constitute official municipal policies or decisions of the City or were adopted, maintained, implemented, relied upon, or enforced by officials possessing final policymaking authority under Florida law.

## IV. FACTUAL BACKGROUND

The following allegations describe the Farm, the governing statutory framework, Defendant's enactments and admissions, and the events giving rise to Plaintiff's claims.

## A. Acquisition and Operation of the Farm

8. In May 2012, Plaintiff acquired approximately twenty (20) acres of land within the municipal boundaries of Defendant City of Haines City, Florida (the "Farm"). At the time of acquisition, the property consisted of a former citrus grove that had fallen into disuse following the decline of commercial citrus production in Central Florida.

9. Shortly after acquiring the Farm, Plaintiff commenced good faith commercial agricultural use of the land. Beginning in or about June 2012, Plaintiff established and cultivated bermudagrass hay as a commercial crop, later documented through Plaintiff's enrollment in the FDACS Best Management Practices Program under Rule 5M-8, Florida Administrative Code. (Exhibit E.)

10. Since 2012, Defendant's LDRs, ordinances, resolutions, policies, practices, and enforcement activities have repeatedly prohibited, interrupted, delayed, or substantially interfered with commercial farm operations conducted on the Farm.

11. The Farm presently produces bermudagrass hay crops through cultivation, fertilization, vegetation management, harvesting, storage, transportation, and related activities customarily incident to commercial agricultural production. Plaintiff alleges that, because Defendant's LDRs prohibit crop production absent municipal authorization, Plaintiff had discontinued that activity, then resumed it in June 2026 in anticipation of FDACS's biennial implementation-verification inspection, consistent with the pattern described in Section IV.I below.

12. Plaintiff also intends to conduct additional farm operations authorized under Florida law, including cattle, equine, goats, sheep, poultry, citrus, silviculture, apiculture, aquaculture, including pond excavation for irrigation and aquaculture purposes, and the customary farm buildings, agricultural structures, fencing, equipment, and other improvements associated with commercial agricultural use of the land.

13. Plaintiff alleges that the farm operations conducted and proposed on the Farm are governed by Florida's statewide agricultural and environmental framework. Plaintiff further alleges that Defendant nevertheless continues to maintain and rely upon LDRs, ordinances, resolutions, policies, and practices that prohibit those farm operations without prior municipal authorization.

13

**B. Statutory Recognition and Agricultural Classification of the Farm**

14. The Farm has received agricultural classification pursuant to § 193.461, Fla. Stat., for every tax year since 2013, including the separate and independent determinations made for tax years 2022, 2023, 2024, 2025, and 2026. (Exhibit A.)

15. The Farm has been assigned Agricultural Use Code 5100 (Cropland) by the Polk County Property Appraiser and has been assessed and taxed as agricultural land based upon its good faith commercial agricultural use of the land. (Exhibit A.)

16. The Farm's agricultural classification remained in effect before Defendant adopted the allegedly void Resolution 15-1153, throughout the Resolution's ten-year term, and after the Resolution expired on August 6, 2025. Plaintiff alleges that, since August 6, 2025, crop production has been a prohibited use under Defendant's LDRs notwithstanding the Farm's continuing agricultural classification and FDACS's verification of BMP implementation in 2024 and 2026.

17. Section 193.461(3)(b), Fla. Stat., defines "bona fide agricultural purposes" as "good faith commercial agricultural use of the land." Plaintiff alleges that the Farm satisfies that statutory definition.

**C. Florida's Statewide Agricultural and Environmental Regulatory Framework**

18. The Farm is located within the Lake Okeechobee Basin Management Action Plan ("BMAP"), adopted by the Florida Department of Environmental Protection ("FDEP") pursuant to § 403.067, Fla. Stat., as Florida's mechanism for satisfying its obligations under § 303(d) of the federal Clean Water Act, 33 U.S.C. §§ 1251 et seq. The United States Environmental Protection Agency has delegated implementation of that program to FDEP. Acting under that same statutory authority and in consultation with FDEP, FDACS develops and adopts the Best Management Practices that serve as the agricultural means of achieving the water-quality reductions the BMAP allocates. (Exhibit E.)

19. Plaintiff's farm operations are enrolled in the Florida Department of Agriculture and Consumer Services ("FDACS") agricultural Best Management Practices ("BMP") program under Notice of Intent No. 41276, filed May 31, 2016; the Farm has remained enrolled since that date. (Exhibit E.)

20. Plaintiff's crop-production activities are governed by Rule 5M-8, Florida Administrative Code, governing Florida Vegetable and Agronomic Crop Operations. (Exhibit F.)

21. FDACS conducts biennial implementation-verification inspections of enrolled agricultural operations to determine whether applicable Best Management Practices have been implemented.

22. FDACS conducted BMP implementation-verification inspections of the Farm in 2022, 2024, and 2026. (Exhibit E.)

23. On June 2, 2026, an FDACS Environmental Specialist conducted a BMP implementation-verification inspection of the Farm's enrolled operation (Notice of Intent No. 41276) and completed the applicable BMP checklist and parcel review. (Exhibit E.)

24. Plaintiff alleges that the Best Management Practices governing the Farm form part of Florida's statewide agricultural and environmental regulatory framework established by the Florida Legislature and implemented by FDACS through rules adopted under Chapter 120, Fla. Stat.

25. The FDACS Best Management Practice programs were developed and adopted pursuant to § 403.067, Fla. Stat., as part of Florida's implementation of the federal Clean Water Act. Plaintiff's implementation of FDACS-adopted Best Management Practices is undertaken pursuant to that statewide program. The applicable FDACS Best Management Practice manuals explain that implementation of those practices constitutes Florida's agricultural strategy for addressing agricultural nonpoint source pollution and achieving applicable water-quality objectives under the Clean Water Act.

26. The Farm's agricultural classification under § 193.461, Fla. Stat., the FDACS-adopted Best Management Practice rules applicable to the Farm, Plaintiff's Notice of Intent, and FDACS implementation-verification records are official public records maintained by the governmental entities designated by the Florida Legislature to administer those statutory programs.

## D. Judicial Recognition of the Existing Farm

27. The Farm has been recognized in multiple judicial proceedings in the Tenth Judicial Circuit Court for Polk County, Florida.

28. In the May 26, 2015 Order entered in Case No. 2014-CA-004014, the Circuit Court referred to the Property as Plaintiff's "existing farm." (Exhibit B.)

29. In subsequent proceedings in Case No. 2021-CA-000352, the Circuit Court referred to Plaintiff's "ongoing operating farm since May 2012." (Exhibit C.)

**E. Defendant's Admissions Concerning Its Land Development Regulations**

30. Defendant adopted the Land Development Regulations relevant to this action in 2012, after Florida enacted §§ 823.14 and 163.3162, Fla. Stat., and after FDACS adopted BMP rules governing multiple categories of agricultural activities.

31. Those rules included Rule 5I-6, Florida Administrative Code, governing silviculture, effective February 11, 2004; Rule 5M-8, governing vegetable and agronomic crop operations, effective February 8, 2006; and Rule 5M-11, governing cow-calf operations, effective April 23, 2009. Each of those rules was in effect before Defendant adopted its 2012 Land Development Regulations.

32. At an October 2015 hearing in Case No. 2014-CA-004014, Judge Carpanini observed that §§ 823.14 and 163.3162, Fla. Stat., had been enacted before Defendant adopted its 2012 Land Development Regulations and asked City Attorney Reilly whether he conceded that those regulations were subject to those statutes. Reilly answered, "Yes Sir." (Exhibit D, Tr. 12.)

33. During the same hearing, City Attorney Reilly advised the Circuit Court that he had consulted with an FDACS staff attorney concerning the statutory framework governing agricultural activities and Best Management Practices and had been informed of those agricultural activities governed by BMP rules adopted under the Florida Administrative Code. (Exhibit D, Tr. 28.)

34. Judge Carpanini then questioned whether Defendant's LDRs recognized the statutory exceptions imposed by §§ 163.3162(3)(a) and 604.50, Fla. Stat., upon municipal regulation of farm buildings and agricultural activities governed by FDACS-adopted Best Management Practices. Reilly responded: "to be candid with the Court, I think there are certainly some places in our code that need to be revised." (Exhibit D, Tr. 28-29.)

35. By contrast, Polk County's Land Development Code expressly recognizes Florida's statutory limitations on municipal regulation of bona fide agricultural operations. Section 222(D) provides: "Nothing herein shall prevent the use of any land for farming, general and animal grazing for bona fide agricultural purposes, or the good faith commercial agricultural use of land, as defined in F.S. § 193.461. This shall be allowed in all land use classifications." Polk County's Code further provides that its residential livestock and fowl regulations "do not apply to the good faith commercial agricultural use of land (bona fide agricultural purposes), as defined in F.S. § 193.461." Defendant has never adopted comparable exceptions despite acknowledging that revisions to its Land Development Regulations were required to conform to Florida law.

16

36. After Reilly's admission, Judge Carpanini stated that, when evaluating a permit application for an activity subject to an applicable FDACS-adopted BMP rule, Defendant should look at the application and say: "we don't have any business regulating" it. (Exhibit D, Tr. 27.)

37. In its Motion for Partial Summary Judgment filed August 23, 2016, in Case No. 2014-CA-004014, Defendant acknowledged that §§ 823.14(6) and 163.3162(3), Fla. Stat., preempt municipal regulation of agricultural activities where the statutory predicates are satisfied. Defendant quoted Judge Carpanini's interpretation that a municipality "may not adopt any ordinance, regulation, rule or policy to prohibit, restrict, regulate or otherwise limit" agricultural activities regulated through implemented Best Management Practices adopted under Chapter 120 as part of a statewide or regional program. Defendant further acknowledged Plaintiff's allegations identifying numerous agricultural activities governed by FDACS-adopted Best Management Practice rules, including Rules 5M-8, 5M-11, 5M-14, 5M-19, 5I-6, and apiculture under Chapter 586. (Exhibit G.)

38. Notwithstanding its acknowledgment that the Land Development Regulations required revision to conform to Florida law, Defendant has continued throughout subsequent litigation to maintain, administer, and rely upon substantially the same Land Development Regulations while asserting that they authorize municipal regulation of Plaintiff's Farm and agricultural activities. Upon information and belief, Defendant has never adopted amendments recognizing lands qualifying for agricultural classification under § 193.461, Fla. Stat., or agricultural activities governed by FDACS-adopted Best Management Practices under §§ 163.3162 and 823.14, Fla. Stat.

39. Plaintiff alleges that, in Case No. 2014-CA-004014, Defendant itself submitted the October 2015 hearing transcript (Exhibit D) as an exhibit in support of its own pleading, and in its Motion to Dismiss filed September 14, 2015, stated: "The CITY readily acknowledges that there are specific 'best management practices' which have been implemented through the Florida Administrative Code and which specifically preempt local governments from regulating certain agricultural activities." In that same September 14, 2015 motion, Defendant also claimed its Land Development Regulations were "properly enacted pursuant to... the general powers for municipal corporations in Chapter 166, Fla. Stat."

17

**F. Defendant's Legislative and Regulatory Scheme**

40. The Farm is located within Defendant's municipal boundaries and is subject to Defendant's Land Development Regulations ("LDRs"), Code of Ordinances, resolutions, policies, and related municipal requirements. (Exhibit H.)

41. Defendant regulates land use within the Farm's zoning district through LDR § 5.6.3. Agricultural uses are not listed as permitted uses within the applicable zoning district. (Exhibit H.)

42. LDR § 5.6.3(E) permits only specified agricultural uses through a discretionary conditional-use process subject to municipal review, public hearing, conditions, operational limitations, and potential denial. Those uses include (a) citrus, (b) forestry, (c) grazing, pasture, and hay production, and (d) the "limited" housing of farm animals. (Exhibit H.) Each of those agricultural activities is governed by one or more FDACS-adopted Best Management Practice rules promulgated pursuant to § 403.067, Fla. Stat., including Rules 5I-6, 5M-8, 5M-11, 5M-14, 5M-16, 5M-19, and 5M-21, Florida Administrative Code. (Exhibit F.)

43. LDR § 5.6.3(D)(4) provides: "Any use or structure not specifically or provisionally permitted by this section shall be considered prohibited." (Exhibit H.)

44. Since February 2014, Defendant has maintained that agricultural operations on the Farm require authorization through its zoning and land-development process before they may lawfully occur.

45. Plaintiff alleges that Defendant's LDRs contain no provision recognizing the statutory exceptions imposed by §§ 163.3162(3)(a), 823.14(6), 586.10, and 604.50, Fla. Stat., or the statutory exclusion of agricultural use from the definition of "development" under Florida law.

46. Defendant's regulatory scheme extends beyond crop production to cattle, goats and equine activities, silviculture, apiculture, aquaculture, poultry, citrus, farm buildings, farm equipment, agricultural fencing, vegetation management, and other farm operations.

47. Defendant also maintains municipal vegetation regulations restricting vegetation height and authorizing code-enforcement proceedings, daily monetary penalties, and other enforcement measures for alleged violations.

18

**G. Defendant's Failure to Implement § 163.3163, Fla. Stat., in Connection with Adjacent Residential Development**

48. Section 163.3163, Fla. Stat., states that its purpose is to ensure that generally accepted agricultural practices will not be subject to interference by residential use of land contiguous to sustainable agricultural land. "Sustainable agricultural land" means land classified as agricultural land pursuant to § 193.461, Fla. Stat. To that end, before issuing a local land-use permit, building permit, or certificate of occupancy for contiguous residential development, a political subdivision shall require the applicant to execute and record the agricultural land acknowledgment prescribed by § 163.3163(4)(a), Fla. Stat.

49. Defendant issued Building Permit No. 2505277 for residential development adjacent to the Farm without requiring the agricultural land acknowledgment prescribed by § 163.3163(4)(a), Fla. Stat. (Exhibit O.)

50. Plaintiff further alleges that Defendant's LDRs contain no provision implementing § 163.3163, Fla. Stat., notwithstanding Defendant's 2015 acknowledgment that portions of its LDRs required revision to conform to Florida law.

**H. Defendant's Resolution 15-1153 and Its Expiration**

51. On August 6, 2015, Defendant adopted the allegedly void Resolution 15-1153, which prohibited, limited, and restricted agricultural activities on the Farm. (Exhibit J.)

52. Plaintiff alleges that § 163.3162(3)(a), Fla. Stat., provides that a governmental entity "may not exercise any of its powers to adopt" any ordinance, resolution, regulation, rule, or policy that prohibits, restricts, regulates, or otherwise limits a qualifying agricultural activity — expressly naming "resolution" among those instruments. Resolution 15-1153 is precisely such an instrument.

53. Resolution 15-1153 restricted crop production, timber, cattle, goats and equine activities, agricultural structures, fencing, and related agricultural uses. It imposed operational conditions and numerical limitations on those agricultural activities.

54. Resolution 15-1153 contained a sunset provision providing that its authorization would expire ten (10) years after adoption.

55. Plaintiff alleges that Resolution 15-1153 treated agricultural activities as municipal privileges that Defendant could grant, condition, limit, or withdraw, rather than activities Florida law already

19

authorized and protected. Hay production is governed by FDACS-adopted Best Management Practice Rule 5M-8; silviculture by Rule 5I-6; cattle operations by Rule 5M-11; and equine operations by Rule 5M-14 (Exhibit F); nonresidential farm buildings and fences are exempt from local government permitting and zoning regulation under § 604.50, Fla. Stat.

56. Defendant bears the burden of showing that Resolution 15-1153's conditions and numerical limitations did not impact the Farm's agricultural operations. See *Wilson v. Palm Beach County*, 62 So. 3d 1247, 1251-52 (Fla. 4th DCA 2011) (holding that the County did not carry that burden, because it offered no proof that its permit conditions did not impact farming operations). Defendant has offered no such proof here.

57. Resolution 15-1153 expired by its own terms on August 6, 2025. Plaintiff alleges that Resolution 15-1153's restrictions remained in effect and impacted the Farm through 2024 and into 2025.

58. Following Resolution 15-1153's expiration on August 6, 2025, Defendant continued to maintain that Plaintiff's agricultural activities remained subject to municipal zoning approval, conditional-use approval, and other land-development requirements under Defendant's LDRs. Plaintiff alleges that Defendant's position, once resting on the allegedly unlawful Resolution, now rests on no instrument at all.

## I. Continuing Enforcement and the Resulting Regulatory Conflict

59. In or about August 2018, Defendant initiated enforcement proceedings against the Farm based on the crop vegetation maintained on the property. (Exhibit K.)

60. Defendant again initiated enforcement proceedings against the Farm on or about November 16, 2023, alleging violations arising from crop vegetation maintained as part of Plaintiff's agricultural operation. (Exhibit L.)

61. Those enforcement actions were based on municipal vegetation-height restrictions that Plaintiff alleges prevent the cultivation and harvesting of commercial bermudagrass hay crops in accordance with accepted agricultural practices and the BMPs governing the Farm.

62. Commercial bermudagrass hay production requires vegetation substantially exceeding twelve (12) inches before harvest, consistent with accepted agricultural practices and FDACS implementation-verification records.

63. Defendant's code-enforcement proceedings exposed Plaintiff to penalties, including potential fines of up to $250 per day for continuing violations.

64. FDACS conducts its biennial Best Management Practice implementation-verification inspections around June and July, and the Polk County Property Appraiser conducts its annual agricultural-classification review towards the end of the year.

65. Plaintiff alleges that cultivation, fertilization, vegetation management, and harvesting activities during those inspection windows were necessary to maintain agricultural classification and BMP-verified status, placing Plaintiff in violation of Defendant's Land Development Regulations, while at other times during 2025 and 2026 Plaintiff did not conduct those activities out of fear of daily fines, code-enforcement penalties, or legal action.

66. Plaintiff alleges that Defendant's regulatory scheme places the Farm in an impossible position. If Plaintiff does not conduct agricultural activities, out of fear of enforcement, the Farm cannot maintain commercial agricultural production, implement applicable Best Management Practices, or preserve the commercial agricultural use upon which its agricultural classification depends. If Plaintiff conducts those same agricultural activities, Defendant maintains they are subject to enforcement under the City's ordinances, regulations, resolutions, rules, policies, and practices.

67. Plaintiff alleges that this conflict arises because Defendant continues to assert municipal regulatory authority over agricultural activities for which Florida law either withdraws municipal legislative authority or excludes from municipal land-development regulation, and that Defendant continues to maintain, administer, rely upon, and enforce the challenged ordinances, regulations, resolutions, rules, policies, and practices against the Farm through 2024, 2025, and to the present day in 2026, notwithstanding that statutory withdrawal or exclusion.

## J. Finding 4 and the Issues Presented in the 2014 State Action

The following allegations identify the scope of the issues actually presented and decided in the 2014 state action, and the material statutory issues Plaintiff alleges were neither presented nor adjudicated.

68. The November 30, 2015 Order entered by Judge Carpanini in the first state action involving the Farm, Case No. 2014-CA-004014, contains the following finding ("Finding 4") (Exhibit I):

21

That pursuant to Section 823.14 and Section 163.3162, Florida Statutes, local governments do have the right to regulate agricultural activities, **but** that local governments may not adopt any ordinance, regulation, rule or policy to prohibit, restrict, regulate or otherwise limit an activity of a bona fide farm operation on land classified as agricultural where such activity is regulated through implemented best management practices or interim measures developed by the Department of Environmental Protection, the Department of Agricultural and Consumer Services or water management districts and adopted under Chapter 120 as part of a statewide or regional program.

69. Plaintiff alleges that Judge Carpanini's ruling in Defendant's favor in Case No. 2014-CA-004014 rested expressly on the absence of any BMP allegation or evidence establishing that the agricultural activities at issue were governed by an applicable BMP rule — a limitation Judge Carpanini himself identified as "not within the four corners of the complaint." After confirming that Defendant's LDRs, adopted in 2012, were subject to §§ 823.14 and 163.3162, Fla. Stat., Judge Carpanini stated: "it appears to the Court, that you can't regulate if the activity is regulated... I mean, that's what it says." (Exhibit D, Tr. 12, 14.)

70. Judge Carpanini separately stated that, when evaluating a permit application for an activity subject to an applicable FDACS-adopted BMP rule, Defendant should look at the application and say: "we don't have any business regulating" it. (Exhibit D, Tr. 27.) Plaintiff alleges that the permit application culminating in Resolution 15-1153 was precisely such an application, and that neither Defendant's LDRs, including § 5.6.3, nor Resolution 15-1153 itself, could lawfully be adopted to require, condition, or limit agricultural activity that is governed by an applicable BMP rule.

71. Plaintiff alleges that the first clause of Finding 4 concerns agricultural activity conducted as an incident of residential use, where the primary use of the property remains residential rather than BMP-governed good faith commercial agricultural use of the land — backyard farming.

72. Plaintiff alleges that the second clause of Finding 4 identifies the governmental actors, the municipal regulatory instruments those actors may not adopt, the protected agricultural activity, and the statutory predicates confirming that municipal legislative authority never extended to that activity. Specifically, Finding 4 prohibits a municipality adopting any ordinance, resolution, regulation, rule, policy, or other measure regulating an agricultural activity conducted on land

22

classified as agricultural under § 193.461, Fla. Stat., where the activity is governed through implemented Best Management Practices adopted by FDACS as rules under Chapter 120 — commercial farming.

73. During the proceedings culminating in the November 30, 2015 Order, Judge Carpanini explained that §§ 163.3162(3)(a) and 823.14(6), Fla. Stat., "mirror each other as to the exception," the exception being that a municipality may not regulate an agricultural activity governed through an FDACS-adopted Best Management Practice Rule. (Exhibit D, Tr. 9.) Judge Carpanini further explained that "the Legislature was making a point that, we're not going to subject agricultural activities to duplicative regulation, if they're regulated by the state ... in the context of a BMP Rule. Then the City doesn't have anything to do with that. Can't regulate it." (Id. at 10, 12.)

74. Responding to Defendant's Motion to Dismiss, which argued the BMP allegation was absent from the complaint, Judge Carpanini stated that it was "not within the four corners of the complaint" and characterized its absence as a "giant problem." (Exhibit D, Tr. 15-16.)

75. Plaintiff alleges that Judge Carpanini did not make any specific finding that the agricultural activities at issue in the 2014 state case were governed by a state-adopted Best Management Practice Rule. Judge Carpanini ruled upon the operative pleadings and record before him, which neither identified an applicable FDACS-adopted Best Management Practice rule nor alleged that the agricultural activities at issue were governed by implemented Best Management Practices. Plaintiff further alleges that neither the operative pleadings nor the proceedings on Defendant's Motion for Summary Judgment in Case No. 2014-CA-004014 identified or presented Rule 5M-11 governing livestock operations or Rule 5M-8 governing commercial agronomic crop production to the Circuit Court.

76. FDACS Best Management Practice Rule 5M-8 became effective on February 8, 2006, and FDACS Best Management Practice Rule 5M-11 became effective on April 23, 2009. Both rules were adopted pursuant to Chapter 120, Fla. Stat., before Defendant adopted the challenged ordinances, regulations, resolutions, rules, policies, and practices at issue in this action.

77. Rule 5M-8, Florida Administrative Code, entitled "Florida Vegetable and Agronomic Crop Best Management Practices," implements a statewide Best Management Practices program applicable to agricultural producers engaged in the production of vegetables and agronomic crops.

78. Plaintiff alleges that the Farm is such an agricultural operation because it is devoted to commercial crop production, classified as agricultural under § 193.461, and governed through implemented state-adopted Best Management Practices. (Exhibits A, E, and F.)

79. The operative pleading in Case No. 2014-CA-004014 also did not allege that § 166.033(6), Fla. Stat. — part of the Municipal Home Rule Powers Act, Chapter 166 — incorporates the definitions of "development permit" and "development order" contained in § 163.3164, Fla. Stat., or that §§ 163.3164(14)-(16) and 380.04(3)(e), Fla. Stat., exclude agricultural use of the Farm from municipal land-development regulation and permitting.

80. The operative pleading likewise did not present the statutory framework recognized in *Love PGI Partners, L.P. v. Schultz*, 706 So. 2d 887 (Fla. 2d DCA 1998), approved, *Schultz v. Love PGI Partners, L.P.*, 731 So. 2d 1270 (Fla. 1999), recognizing that good faith commercial agricultural use of the land does not require a municipal land-use permit merely because the property is located within a residential zoning district.

81. Plaintiff alleges that, although § 380.04(3)(e), Fla. Stat., was presented in Case No. 2014-CA-004014, it was presented in isolation. Plaintiff further alleges that the statutory framework described in paragraphs 79 and 80, including Chapter 166, Fla. Stat., § 166.033(6), and the incorporation of the definitions contained in § 163.3164 into municipal development permitting, was neither presented to nor decided in Case No. 2014-CA-004014 or in any other state-court proceeding.

82. Plaintiff alleges that none of the orders entered in the prior state-court proceedings identifies any FDACS-adopted Best Management Practice rule contained in the Florida Administrative Code, determines whether Plaintiff's agricultural activities are governed by any such rule, or addresses the legal effect of §§ 163.3162 or 823.14, Fla. Stat., after those BMP-rule statutory predicates and agricultural classification under § 193.461 are satisfied.

83. Plaintiff alleges that Defendant's LDRs contain no exception for an agricultural activity satisfying the two predicates of Finding 4's second clause — agricultural classification under § 193.461 and governance through implemented FDACS-adopted Best Management Practice rules; without such an exception, the LDRs apply the same prohibitions and restrictions to an activity within the second clause as to an activity within the first, even though §§ 163.3162(3)(a) and 823.14(6), Fla. Stat., prohibit exactly the adoption of any such regulation or resolution.

24

84. Plaintiff therefore alleges that when the two predicates are present, the second clause of Finding 4 renders unlawful the very municipal authority the first clause otherwise describes — and that Defendant's LDRs, lacking any exception distinguishing the two, were unlawfully adopted as to all agricultural activity satisfying those predicates, as evidenced by Resolution 15-1153 and LDR §§ 4.2.1 and 5.6.3, none of which recognizes any such exception.

85. Plaintiff alleges that no evidence beyond the text of the governing statutes and Defendant's own LDRs is required to establish this ground. Whether Defendant's LDRs contain an exception for agricultural activity satisfying the predicates of Finding 4's second clause is a question resolved by comparing the statutory text of §§ 823.14(6) and 163.3162(3)(a) to the text of Defendant's LDRs themselves — a purely facial inquiry, not one requiring proof of the practical impact of any specific condition on farming operations.

## K. Prior Federal Litigation

86. Plaintiff previously brought three related federal actions arising from Defendant's regulation of the Farm:

> a. *Mohit v. City of Haines City*, No. 8:18-cv-01775 (M.D. Fla.), aff'd, No. 20-11820 (11th Cir. Jan. 26, 2021) ("*Mohit I*");
>
> b. *Mohit v. [Individual City Officials]*, No. 8:20-cv-00813 (M.D. Fla.), aff'd, No. 21-12483 (11th Cir. Jan. 18, 2023) ("*Mohit II*"); and
>
> c. *Mohit v. City of Haines City*, No. 8:23-cv-02025 (M.D. Fla.), aff'd, No. 24-12945 (11th Cir. Apr. 29, 2025) ("*Mohit III*").

87. *Mohit I* was dismissed for failure to allege a total taking and adequately plead the applicable constitutional standards.

88. *Mohit II* named individual City officials rather than Defendant and was dismissed on legislative immunity and pleading grounds.

89. *Mohit III* was dismissed on claim-preclusion grounds based upon prior state-court rulings. Plaintiff alleges, however, that those rulings addressed only the first clause of Finding 4 and did not adjudicate the second clause of Finding 4, namely whether the Farm was classified as agricultural under § 193.461, Fla. Stat., and whether Plaintiff's agricultural activities were governed by an applicable FDACS-adopted Best Management Practice Rule — the statutory predicates confirming that Defendant's legislative authority never extended to adopt municipal ordinances, resolutions, regulations, rules, policies, or other measures regulating those activities.

25

90. In its October 1, 2019 Motion to Dismiss in *Mohit I*, Defendant characterized adoption of its LDRs as "a policymaking function of the City Commission."

91. In *Mohit I*, 845 F. App'x 808 (11th Cir. 2021), the district court held that Plaintiff's contention that Florida law prohibited Defendant from enacting its LDRs and permit requirements had been "squarely addressed and rejected" by the state court. The Eleventh Circuit affirmed. Plaintiff does not challenge that ruling. Consistent with Paragraph 68 above, Plaintiff alleges that the state-court rulings underlying *Mohit I*'s holding addressed only the first clause of Finding 4, but not the second clause, and that no state-court ruling actually decided the statutory framework described in Finding 4's second clause or in Section V below, including the statutory predicates confirming that municipal legislative authority never extended to the agricultural activities at issue.

92. In *Mohit III*, the Eleventh Circuit relied on *Mohit I*'s "squarely rejected" characterization in applying claim preclusion and stated that Plaintiff's "alleged new facts regarding his land classification and BMP applicability" did not change its analysis. No. 24-12945, Doc. 29-1 (11th Cir. Apr. 29, 2025).

93. Plaintiff alleges that no court in *Mohit I*, *Mohit II*, or *Mohit III* analyzed whether Defendant possessed legislative authority to adopt or maintain the ordinances, regulations, resolutions, rules, policies, and practices challenged in this action after the statutory predicates described in the second clause of Finding 4 — as explained above — had been satisfied.

94. Plaintiff further alleges that no federal court identified a prior state-court order analyzing the six-grounds statutory framework described in Section V below or determining that Defendant possessed legislative authority to adopt the challenged ordinances, resolutions, regulations, rules, or policies notwithstanding §§ 163.3162(3)(a) and 823.14(6), Fla. Stat.

95. Those statutory grounds include the statutory definition of "development"; §§ 823.14(6) and 163.3162(3)(a); agricultural classification under § 193.461; the statutes governing apiculture and aquaculture; the exemptions applicable to farm buildings and farm equipment; and § 163.3163, the Agricultural Land Acknowledgment Act — the independent grounds alleged in Section V below.

96. Plaintiff alleges that Rule 5M-21, Florida Administrative Code, effective February 23, 2025, was never presented to or decided in *Mohit I*, *Mohit II*, or *Mohit III*. Rule 5M-21 governs Florida Small Farms and Specialty Livestock Operations under 50 acres — a category the Farm's

26

approximately 20 acres independently satisfies, apart from Rule 5M-8. Claim preclusion cannot bar a theory resting on a rule never raised in any prior proceeding.

97. This action also concerns Defendant's maintenance and enforcement of Resolution 15-1153 during 2023 through 2025, the Resolution's expiration on August 6, 2025, and Defendant's assertion of municipal regulatory authority after that expiration.

98. Plaintiff alleges that those events occurred during or after the prior federal actions and constitute new and continuing municipal conduct distinct from the legislative actions and claims addressed in *Mohit I*, *Mohit II*, and *Mohit III*.

### L. State-Created Property Interests

99. Article I, § 2 of the Florida Constitution identifies the right to "acquire, possess and protect property" as an inalienable right, and Article I, § 9 provides that no person shall be deprived of property without due process of law.

100. Federal constitutional protection of property looks to state law to define the interest at stake. *Board of Regents v. Roth*, 408 U.S. 564, 577 (1972) ("Property interests... are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law"). Plaintiff alleges that Florida's Constitution, statutes, and implementing regulations define and protect the property interests associated with the Farm, including its commercial agricultural use, agricultural classification under § 193.461, Fla. Stat., agricultural activities governed through applicable FDACS-adopted Best Management Practice Rules, farm operations, farm buildings and equipment, and participation in Florida's statewide agricultural and environmental regulatory framework.

101. Plaintiff alleges that Defendant's continued assertion of legislative authority over those state-created property interests through its ordinances, regulations, resolutions, rules, policies, and practices, including after the allegedly void Resolution 15-1153 expired on August 6, 2025, forms the basis of the constitutional claims alleged below.

27

## V. FLORIDA STATUTORY FRAMEWORK DEFINING PLAINTIFF'S PROTECTED PROPERTY INTERESTS

The following statutory provisions identify the state-created property interests asserted in this action and the independent withdrawals of municipal authority upon which Plaintiff's constitutional claims are based.

### A. Development Definitions

102. Section 166.033(6), Fla. Stat., part of the Municipal Home Rule Powers Act, provides that the terms "development permit" and "development order" have the same meaning as in § 163.3164, Fla. Stat.

103. Section 163.3164(14), Fla. Stat., incorporates the definition of "development" contained in § 380.04, Fla. Stat.

104. Section 380.04(3), Fla. Stat., provides that the following operations or uses "shall not be taken... to involve 'development'":

> (e) The use of any land for the purpose of growing plants, crops, trees, and other agricultural or forestry products; raising livestock; or for other agricultural purposes.

105. Section 163.3164(15), Fla. Stat., defines a "development order" as any order granting, denying, or granting with conditions an application for a development permit.

106. Section 163.3164(16), Fla. Stat., defines a "development permit" to include any building permit, zoning permit, subdivision approval, rezoning, certification, special exception, variance, or other official action of local government having the effect of permitting the development of land.

107. Plaintiff alleges that, under §§ 166.033(6), 163.3164(14)-(16), and 380.04(3), Fla. Stat., the use of land for bona fide agricultural purposes is excluded from the statutory definition of "development" and therefore does not require a municipal development permit or development order. Plaintiff further alleges that Defendant nevertheless required zoning approvals, conditional-use permits, development approvals, and other municipal authorizations for agricultural activities that Florida law excludes from "development."

28

## B. Agricultural Definitions

108. Sections 823.14(3)(c) and 163.3162(2), Fla. Stat., define a "farm" as the land, buildings, support facilities, machinery, and other appurtenances used in the production of farm or aquaculture products. As used herein, "Farm" has the same meaning. Plaintiff alleges that the Property constitutes a Farm within the meaning of those statutes.

109. Section 823.14(3)(d), Fla. Stat., defines a "farm operation" as all conditions or activities by the owner, lessee, agent, independent contractor, or supplier that occur on a farm in connection with the production of farm, honeybee, or apiculture products.

110. Article VII, § 4(a) of the Florida Constitution authorizes agricultural land to be "classified by general law and assessed solely on the basis of character or use." Section 193.461, Fla. Stat., implements this constitutional authorization by requiring the Property Appraiser to classify land as agricultural where the land is used primarily for bona fide agricultural purposes, defined in § 193.461(3)(b) as "good faith commercial agricultural use of the land." The Property Appraiser makes this determination annually based upon the actual use of the land, regardless of its zoning designation.

111. Florida law has long recognized that good faith commercial agricultural use of the land is determined by the actual agricultural operation conducted on the land rather than by municipal disagreement with that use. Accordingly, agricultural classification status depends upon the agricultural use of the land, not upon local zoning classifications or municipal land-use preferences. *Greenwood v. Oates*, 251 So. 2d 665 (Fla. 1971); *Straughn v. Tuck*, 354 So. 2d 368 (Fla. 1977).

112. Plaintiff alleges that these constitutional, statutory, and judicial definitions establish state-created property interests in the Farm, its commercial agricultural use, and the agricultural activities conducted thereon — interests municipal zoning has no power to define, diminish, or extinguish. Plaintiff further alleges that Defendant's ordinances, regulations, resolutions, rules, policies, and practices deprive Plaintiff of those state-created interests by requiring municipal approval Defendant never had authority to require, for activities Florida law defines and protects independently of local zoning.

113. Plaintiff alleges that Defendant's own Land Development Regulations, at § 4.2.1, define "development" without excluding agriculture. Defendant's October 21, 2014 Motion to Dismiss

29

in Case No. 2014-CA-004014 confirmed this, stating that "the Section 4.2.1 definition of 'development' does not exclude agriculture or farming activities." Plaintiff alleges that § 4.2.1, as part of Defendant's Land Development Regulations, is bound by § 166.033(6), which incorporates § 163.3164's definitions, which in turn incorporate § 380.04(3)(e)'s express exclusion of agricultural use from "development." Defendant's own admission confirms its LDRs never recognized that exclusion.

## C. First Independent Statutory Limitation — Definitional Exclusion

114. Section 166.033(6), Florida Statutes, provides that the terms "development permit" and "development order," as used in the Municipal Home Rule Powers Act, have the same meanings assigned in § 163.3164, Florida Statutes. Section 163.3164, in turn, incorporates the definition of "development" contained in § 380.04(3)(e), which expressly excludes the use of land for growing crops, raising livestock, and other agricultural purposes from the statutory definition of "development." In *Schultz v. Love PGI Partners, L.P.*, 731 So. 2d 1270 (Fla. 1999), the Florida Supreme Court recognized and applied that statutory framework, holding that qualifying agricultural activities are not "development" and therefore are not subject to municipal development permitting.

115. Plaintiff alleges that the Farm falls within the statutory agricultural exclusion recognized in Schultz because it is devoted to good faith commercial agricultural use of the land, has received agricultural classification under § 193.461, Florida Statutes, for tax years 2022 through 2026, has been judicially recognized as an existing and continuing farm, and engages in agricultural activities excluded from the statutory definition of "development."

116. Plaintiff further alleges that the Farm has remained enrolled in FDACS-administered Best Management Practices from 2022 through 2026, further confirming that its agricultural activities are conducted pursuant to Florida's statewide agricultural regulatory framework.

117. Plaintiff therefore alleges that the Farm falls within the agricultural exclusion incorporated through §§ 166.033(6) and 163.3164 and excluded from the definition of "development" by § 380.04(3)(e), Florida Statutes, which provides that such agricultural use "shall not be taken... to involve 'development.'" Because the Farm is not "development" as defined by Florida law, Defendant lacks authority to require development permits, zoning approvals, conditional-use

30

approvals, development orders, or other municipal land-development approvals for those agricultural activities.

118. Plaintiff alleges that no evidence beyond the text of §§ 166.033(6), 163.3164(14)-(16), and 380.04(3)(e), Fla. Stat., is required to establish this ground. Whether commercial crop cultivation is excluded from "development" is resolved by the statute's own terms, without regard to any factual showing of impact.

119. Additional facts supporting this ground include that the Farm is located within the City's R-2 zoning district, Defendant's LDRs do not identify agriculture as a permitted use within that district, and uses not expressly listed as permitted or conditional are prohibited. (Exhibit H, LDR § 5.6.3.)

120. Defendant's vegetation-height restrictions under Code §§ 11-40 and 11-42 further prohibit normal crop maturation and harvesting, diminishing the Farm's economic value from commercial crop production.

121. Plaintiff further alleges that, even if Defendant's vegetation-height restrictions were justified as measures protecting health, safety, or the environment rather than residential aesthetics, that justification independently fails. The Florida Legislature has expressly found in §§ 823.14(2) and 163.3162(1), Florida Statutes, that "the continuation of agricultural activities preserves the landscape and environmental resources of the state" and that "the encouragement, development, and improvement of agriculture will result in a general benefit to the health, safety, and welfare of the people of the state." Commercial hay production exceeding twelve inches is consistent with those legislative findings and constitutes the very agricultural activity the Legislature declared should be encouraged and protected.

**D. Second Independent Statutory Limitation — Municipal Authority Never Extended to BMP-Governed Agricultural Activities Under §§ 823.14(6) and 163.3162(3)(a), Fla. Stat.**

122. Effective June 15, 2000, the Florida Right to Farm Act, § 823.14(6), Fla. Stat., provides that, notwithstanding any other provision of law, a local government may not adopt any ordinance, regulation, rule, or policy that prohibits, restricts, regulates, or otherwise limits an agricultural activity on land classified as agricultural pursuant to § 193.461, Fla. Stat., where the activity is regulated through implemented Best Management Practices developed by the Florida Department

31

of Agriculture and Consumer Services and adopted under chapter 120 as part of a statewide program.

123. The Right to Farm Act "limit[s] adoption of new ordinances from the date the Legislature first prohibited such adoption, which occurred on June 16, 2000." *Wilson*, 62 So. 3d at 1249.

124. Effective July 1, 2003, the Agricultural Lands and Practices Act, § 163.3162(3)(a), Fla. Stat., further provides that, notwithstanding any other law, including any provision of chapter 163, a governmental entity may not exercise any of its powers to adopt any ordinance, resolution, regulation, rule, or policy that prohibits, restricts, regulates, or otherwise limits an agricultural activity conducted on land classified as agricultural pursuant to § 193.461, Fla. Stat., where that activity is regulated through implemented Best Management Practices developed by the Florida Department of Agriculture and Consumer Services and adopted under chapter 120 as part of a statewide program. The statute likewise applies where the agricultural activity is expressly regulated by the United States Department of Agriculture, the United States Army Corps of Engineers, or the United States Environmental Protection Agency.

125. The First District Court of Appeal has confirmed that "the plain, unambiguous terms of § 163.3162(4), Fla. Stat., prevent counties from adopting ordinances relating to agriculture." *J-II Investments, Inc. v. Leon County*, 908 So. 2d 1140, 1141 (Fla. 1st DCA 2005).

126. Florida's agricultural Best Management Practices program is part of the State's implementation of § 303(d) of the Clean Water Act through § 403.067, Fla. Stat.

127. Best Management Practices implemented under Florida law are supported in part through federal funding authorized by § 319 of the Clean Water Act, 33 U.S.C. § 1329.

128. Plaintiff alleges that the Farm has received agricultural classification under § 193.461, Fla. Stat., for the tax years 2022 through 2026.

129. The FDACS has adopted statewide Best Management Practice ("BMP") rules governing numerous agricultural activities, including Rule 5M-8 (Florida Vegetable and Agronomic Crop Operations; effective February 8, 2006, before Defendant adopted the LDRs challenged in this action), Rule 5M-11 (Florida Cattle Operations; effective April 23, 2009), Rule 5M-14 (Florida Equine Operations), Rule 5M-19 (Florida Poultry Operations), and Rule 5M-21 (Florida Small

32

Farms and Specialty Livestock Operations; effective February 23, 2025), each adopted pursuant to § 403.067, Fla. Stat., and Chapter 120, Fla. Stat.

130. In addition to Rule 5M-8 governing Plaintiff's existing agronomic crop operation, Plaintiff's Farm also falls within the scope of Rule 5M-21, Florida Administrative Code, which became effective on February 23, 2025, and establishes FDACS-approved Best Management Practices for Florida Small Farms and Specialty Livestock Operations, including farms of less than 50 acres. Plaintiff's approximately 20-acre Farm falls within that category.

131. Plaintiff alleges that the Farm's cultivation, fertilization, vegetation management, harvesting, and other farm operations remain governed by implemented Best Management Practices under Rule 5M-8, and therefore fall within the scope of §§ 823.14(6) and 163.3162(3)(a), Fla. Stat. — activities Defendant's municipal authority never extended to — because they are conducted on land classified as agricultural under § 193.461 and governed by implemented FDACS-adopted Best Management Practices.

132. Plaintiff alleges that Defendant has purported to exercise municipal legislative authority through Ordinance 12-1424, Resolution 15-1153, the LDRs, and related ordinances, rules, policies, and practices that prohibit, restrict, regulate, condition, or otherwise limit agricultural activities governed through state-implemented Best Management Practices — authority Defendant never possessed.

133. Plaintiff further alleges that Defendant may not rely on municipal legislation or its enforcement to prevent the statutory predicates upon which §§ 823.14(6) and 163.3162(3)(a) operate and thereby manufacture municipal authority the Florida Legislature never granted.

134. Defendant initiated vegetation-enforcement proceedings against the Farm in August 2018. (Exhibit K.)

135. Defendant again initiated vegetation-enforcement proceedings on November 16, 2023 (Exhibit L), exposing Plaintiff to potential fines of up to $250 per day pursuant to Defendant's LDRs, ordinances, codes, and policies, despite the Farm's continued agricultural classification and BMP-governed status.

136. Section 163.3162(3)(c), Fla. Stat., provides that a governmental entity may not charge an assessment or fee for stormwater management on land classified as agricultural under § 193.461,

33

Fla. Stat., if the farm implements best management practices adopted as a rule under chapter 120, Fla. Stat. Plaintiff alleges that Defendant has nevertheless assessed and collected annual stormwater charges against the Farm for tax years 2022 through 2026 (Exhibit M) and continues to impose such assessments. Plaintiff seeks reimbursement of all stormwater assessments unlawfully imposed and collected by Defendant.

## E. Third Independent Statutory Limitation — State Agricultural Classification Under §§ 193.461 and 163.3194(5), Fla. Stat.

137. Section 193.461, Fla. Stat., establishes Florida's uniform statewide agricultural-classification system and provides for the classification of land devoted primarily to commercial agricultural use.

138. Plaintiff alleges that the Farm has been classified as agricultural land under § 193.461, Fla. Stat., for the tax years 2022 through 2026.

139. Article VII, § 4 of the Florida Constitution and § 193.461, Fla. Stat., require that agricultural classification be determined by actual use, not zoning. *Greenwood*, 251 So. 2d 665; *Straughn*, 354 So. 2d 368.

140. Section 163.3194(5), Fla. Stat., provides that the tax-exempt status of land classified as agricultural under § 193.461 shall not be affected by a local comprehensive plan so long as the land continues to satisfy the criteria established by § 193.461, Fla. Stat.

141. Plaintiff alleges that Defendant's LDRs implement Defendant's comprehensive plan, which cannot affect that classification; LDRs subordinate to that plan cannot affect it either.

142. Plaintiff further alleges that the Farm's agricultural classification under § 193.461 depends upon the Property remaining devoted primarily to commercial agricultural use.

143. Plaintiff alleges that, if compelled to comply with Defendant's LDRs, the Farm could no longer remain devoted primarily to bona fide agricultural use and therefore could no longer satisfy the statutory criteria for agricultural classification under § 193.461, Fla. Stat.

144. Plaintiff therefore alleges that, although § 163.3194(5), Fla. Stat., provides that the Farm's agricultural classification shall not be affected by Defendant's comprehensive plan, Defendant's ordinances, regulations, resolutions, rules, policies, and practices prohibit the agricultural use necessary to maintain that classification, thereby depriving Plaintiff of the state-law protections

34

that depend upon the Farm's continued agricultural classification under §§ 193.461 and 163.3194(5), Fla. Stat.

145. Plaintiff alleges that the Property Appraiser classifies land as agricultural each year based on the actual commercial agricultural use of the land in the prior year. Since Defendant's Land Development Regulations prohibited agricultural activity on the Farm in 2023, 2024, 2025, and 2026, Plaintiff had to violate those regulations each year to maintain the classification Florida law otherwise protects. Plaintiff alleges that this demonstrates the same impossible position described throughout this Complaint: compliance with Defendant's Land Development Regulations would have cost Plaintiff the very classification those regulations cannot lawfully defeat.

## F. Fourth Independent Statutory Limitation — Agricultural Land Acknowledgment Act Under § 163.3163, Fla. Stat.

146. Section 163.3163, Fla. Stat. (Agricultural Land Acknowledgment Act), recognizes that residential development adjacent to land classified as agricultural under § 193.461 may adversely affect agricultural production and farm operations and lead to the conversion of agricultural land to nonagricultural uses. Accordingly, before issuing a local land use permit, building permit, or certificate of occupancy for contiguous residential development, a political subdivision shall require a recorded Agricultural Land Acknowledgment from the applicant.

147. Plaintiff alleges that Defendant's ordinances, regulations, rules, policies, and practices are incompatible with § 163.3163, which mandates that Defendant, as the permitting authority, obtain an acknowledgment from adjacent residential development of agricultural operations conducted on land classified under § 193.461, Fla. Stat.

148. Plaintiff alleges that § 163.3163's premise is that the Farm's agricultural use, settled by its classification under § 193.461, is a lawful use requiring accommodation by incoming residential development. That premise is inconsistent with Defendant's LDRs conditioning the Farm's crop cultivation, buildings for storing and drying hay, and implementation of Best Management Practices upon municipal permission Defendant lacked authority to require. Plaintiff further alleges that § 163.3163 protects the Farm's agricultural use regardless of Defendant's zoning restrictions, and that Defendant's residential zoning of the Farm does not render that use unlawful or excuse Defendant's failure to comply with the statute.

149. Plaintiff further alleges that Defendant itself zoned the Farm R-2, residential. Defendant cannot rely on that same designation to declare Plaintiff's agricultural operation unlawful while § 163.3163 requires Defendant, when permitting neighboring residential development, to protect that same use from residential encroachment.

150. Plaintiff alleges that, because the Farm has received agricultural classification under § 193.461, it constitutes "sustainable agricultural land" within the meaning of § 163.3163.

151. Plaintiff alleges that Building Permit No. 2505277 (Exhibit O) authorized residential development contiguous to the Farm and was therefore subject to § 163.3163.

152. Plaintiff alleges that Defendant issued Building Permit No. 2505277 without obtaining the agricultural land acknowledgment required by § 163.3163.

153. Plaintiff alleges that no prior state or federal court proceeding addressed Defendant's obligations under § 163.3163, Fla. Stat., or the acknowledgment requirement's implications for Defendant's characterization of agricultural use within residentially zoned districts.

154. Plaintiff alleges that Defendant's ordinances, regulations, resolutions, rules, policies, and practices cannot be reconciled with § 163.3163, which places the accommodation burden on adjacent residential development; and that Defendant has inverted that statutory scheme, instead placing the burden on the Farm — treating Plaintiff's agricultural operation as unlawful within the R-2 district and requiring Plaintiff, rather than neighboring residential development, to accommodate residential uses through restrictions on agricultural activities.

## G. Fifth Independent Statutory Limitation — State Regulation of Apiculture and Aquaculture Under §§ 586.10, 586.055, 597.002, and 597.004, Fla. Stat.

155. Florida has enacted comprehensive statutory schemes governing apiculture and aquaculture that assign primary regulatory authority to the State; municipal authority never extended to those agricultural activities.

156. Section 586.10, Fla. Stat., vests the State with authority to regulate, inspect, and permit honeybee colonies and expressly supersedes any related ordinance adopted by a county, municipality, or political subdivision. Section 586.055 further provides that a local government may not prohibit beekeeping operations conducted on land classified as agricultural under § 193.461.

157. Plaintiff alleges that no evidence beyond the text of § 586.10, Fla. Stat., and Defendant's LDRs is required to establish this ground. Section 586.10 categorically preempts local regulation of honeybee colonies, without regard to classification, Best Management Practices, or any other predicate — a determination resolved entirely by comparing the statute's text to Defendant's LDRs.

158. Plaintiff has maintained registered apiaries on the Farm and has obtained FDACS registrations under Chapter 586. (Exhibit P.)

159. Sections 597.002 and 597.004, Fla. Stat., declare aquaculture to be agriculture and assign primary regulatory authority over aquaculture to the FDACS.

160. Plaintiff alleges that apiculture and aquaculture are agricultural activities authorized under Florida law that may be conducted as part of the Farm's continuing agricultural operation.

161. Plaintiff therefore alleges that Defendant's municipal authority never extended to apiculture or aquaculture in the first instance; Chapters 586 and 597, Fla. Stat., committed exclusive regulatory authority over those activities to the State. Defendant's ordinances, regulations, resolutions, rules, policies, and practices nevertheless prohibit, restrict, condition, and subject apiculture and aquaculture to municipal approval, asserting authority Defendant never possessed over activities the Legislature placed beyond municipal reach.

## H. Sixth Independent Statutory Limitation — Farm Buildings and Equipment Under §§ 604.40 and 604.50, Fla. Stat.

162. Florida law independently protects farm buildings, equipment, fencing, and related agricultural infrastructure through multiple statutory provisions confirming that municipal authority never extended to those facilities.

163. Section 604.40(1), Fla. Stat., provides that, notwithstanding any other law, ordinance, rule, or policy to the contrary, all power-drawn, power-driven, or self-propelled equipment used on a farm, or used to transport farm products, may be stored, maintained, or repaired by the owner within the boundaries of the owner's farm and at least 50 feet from any public road, without limitation.

164. Section 604.50(1), Fla. Stat., provides that, notwithstanding any provision of law to the contrary, any farm building, farm fence, or farm sign located on lands used for bona fide

37

agricultural purposes is exempt from the Florida Building Code and any county or municipal code or fee. Section 604.50(2)(a), Fla. Stat., provides that "bona fide agricultural purposes" has the same meaning as provided in § 193.461(3)(b), Fla. Stat.

165. In *14269 BT LLC v. Village of Wellington*, 240 So. 3d 1 (Fla. 4th DCA 2018), the court held that farm buildings are exempt not only from municipal building-permit requirements but also from municipal zoning regulations, including land-development regulations limiting the number of barns permitted within a zoning district.

166. Plaintiff alleges that, because Defendant's LDRs prohibit farm equipment and farm buildings on the Farm, Plaintiff is forced to lease farm equipment and off-site buildings, and intends to utilize on-site farm buildings, agricultural fencing, equipment-storage facilities, shelters, and related agricultural infrastructure customarily associated with commercial agricultural operations once that unlawful restriction is removed.

167. Plaintiff further alleges that Defendant's ordinances, regulations, resolutions, rules, policies, and practices require municipal approval, zoning authorization, conditional-use approval, permits, or other local governmental authorization for farm buildings, fencing, and related infrastructure.

168. Plaintiff alleges that the buildings, fencing, equipment, and related infrastructure utilized or proposed for use on the Farm fall within the protections afforded by §§ 604.40 and 604.50.

169. Defendant's Resolution No. 15-1153 treated the statutory rights and exemptions established by §§ 604.40 and 604.50 as conditions of a municipal Conditional Use Permit rather than as self-executing protections established by the Florida Legislature. By conditioning those statutory rights upon municipal approval and placing them within a permit that expired on August 6, 2025, Defendant subjected them to the City's land-development approval process. Plaintiff alleges that neither Resolution No. 15-1153 nor its expiration could enlarge, diminish, suspend, or terminate those statutory protections.

170. Plaintiff alleges that Resolution 15-1153 conditioned any farm building constructed under its authority upon the Resolution's own existence — meaning any such building would have required demolition upon the Resolution's expiration on August 6, 2025, the same event that also halted the crop production the building existed to serve. A statutory exemption that lapses with a municipal instrument's sunset clause is not "self-executing." See *Wellington*, 240 So. 3d 1.

38

171. Plaintiff alleges that the City's justification for Resolution 15-1153's sunset clause — anticipated residential development — was the same rationale Judge Carpanini had already rejected on the record, stating surrounding development, even "condominium high rises," was "irrelevant" to the Farm's right to remain. (Exhibit D, Tr. 30-32.) Reilly conceded: "Yes Sir." (Id. at 32.) That justification also contradicts § 163.3163, which requires residential development to accommodate existing agricultural use, not the reverse.

172. Sections 823.14(6) and 163.3162(3)(a) confirm that municipal authority never extended to farm buildings and equipment. For purposes of those statutes, a "farm" includes the land, buildings, and machinery used in producing farm or aquaculture products. Their protection therefore extends beyond field cultivation to the Farm's buildings and equipment.

173. Sections 166.033(6), 163.3164, and 380.04(3)(e), Fla. Stat., independently exclude customary farm buildings and equipment from the statutory definition of development and the development-permit process.

174. When Defendant adopted LDR §§ 5.6.3(D)(4) and (E) in 2012, Florida law already exempted farm buildings, equipment, and fencing from municipal regulation. Plaintiff alleges that this defect existed upon enactment: Defendant prohibited agricultural structures and authorized only limited animal housing without creating any exception for those statutory exemptions.

175. City Code § 5-2 independently prohibits the keeping of farm animals within the City except as authorized, thereby further demonstrating Defendant's policy of conditioning livestock housing, and agricultural fencing upon municipal approval. (Exhibit H.)

176. Plaintiff therefore alleges that Defendant lacks authority to require building permits, development permits, zoning approval, conditional-use approval, or other municipal authorization for farm buildings, equipment, fencing, and related agricultural infrastructure because §§ 604.40 and 604.50 independently exempt those activities from local regulation, while §§ 823.14(6), 163.3162(3)(a), 166.033(6), 163.3164, and 380.04(3)(e) confirm that municipal authority never extended to them. Defendant nevertheless continues to require those approvals.

## I. The Illusory Escape: Municipal Zoning Cannot Defeat the Foregoing Statutory Grounds

177. Plaintiff alleges that §§ 166.033(6), 163.3164, and 380.04(3)(e) independently foreclose a zoning permit mandate for the Farm's agricultural activities. Because agricultural use is excluded from the statutory definition of "development," and because a "development permit" under § 163.3164(16) includes "any... zoning permit," Defendant therefore cannot require a zoning permit for agricultural activities that Florida law excludes from the statutory definition of development.

178. Plaintiff alleges that agricultural classification under § 193.461 controls over an inconsistent residential zoning designation. Article VII, § 4(a) of the Florida Constitution authorizes agricultural land to be classified by general law based on its actual character or use, and § 193.461 is the general law implementing that constitutional authorization. Section 163.3194(5) provides that classification is unaffected by a local comprehensive plan, and § 163.3194(1)(b) requires that all land development regulations, including zoning, be consistent with and subordinate to that same comprehensive plan. Zoning, being subordinate to a comprehensive plan that cannot itself override agricultural classification, likewise cannot override that classification or accomplish indirectly what the comprehensive plan cannot do directly.

179. Plaintiff alleges that §§ 823.14(6) and 163.3162(3)(a) provide that Defendant "may not exercise any of its powers" to adopt an ordinance that prohibits, restricts, or limits qualifying agricultural activity — a phrase that includes zoning ordinances specifically, confirming that no municipal power, however framed, was ever available to authorize the prohibition or restriction.

180. Plaintiff alleges that if municipal zoning could override agricultural classification, defeat the statutory predicates, or prohibit activities already governed by state-adopted Best Management Practices, §§ 823.14(6) and 163.3162(3)(a) would be rendered meaningless: any municipality could manufacture authority the Florida Legislature never granted, simply by zoning to ensure the predicates never apply within its boundaries. This would contradict the Legislature's express intent, stated in § 823.14(6), "to eliminate duplication of regulatory authority over farm operations," and in § 163.3162(1), to "protect reasonable agricultural activities conducted on farm lands from duplicative regulation."

181. At the October 2015 hearing in Case No. 2014-CA-004014, Judge Carpanini explained that §§ 163.3162(3)(a) and 823.14(6) "mirror each other as to the exception," stating: "the Legislature

40

was making a point that we're not going to subject agricultural activities to duplicative regulation... Then the City doesn't have anything to do with that. Can't regulate it." (Exhibit D, Tr. 9-12.)

182. Plaintiff alleges that §§ 823.14(6) and 163.3162(3)(a) prohibit Defendant from adopting any ordinance, including a zoning ordinance, to prohibit BMP-governed agricultural activity on the Farm. Sections 166.033(6), 163.3164, and 380.04(3)(e) independently prohibit a zoning permit requirement for that same activity, since it is excluded from the definition of "development" — actual use, not zoning label, controls. *Greenwood*, 251 So. 2d 665; *Straughn*, 354 So. 2d 368. Section 163.3163 independently requires Defendant to protect the Farm's agricultural classification from conflicts created by adjacent residential development, not the reverse.

183. Plaintiff further alleges that Defendant's failure to revise its LDRs to comply with state laws, and its continued violation of those laws notwithstanding City Attorney Reilly's 2015 acknowledgment that revisions were needed, would permit any municipality to eliminate the statutory protections established by §§ 163.3162(3)(a), 823.14(6), and 163.3163 simply by assigning residential zoning to land used primarily for agricultural production. The Florida Legislature could not have intended statewide statutory protections governing agricultural classification, existing farms, and FDACS-regulated agricultural activities to depend entirely upon municipal zoning decisions. Plaintiff therefore alleges that Defendant's continued violation of those laws, despite that acknowledgment, conflicts with the structure and purpose of Florida's statewide agricultural statutory framework.

## J. Continuing Economic Injury

184. By adopting, maintaining, and continuing to rely upon LDRs, ordinances, resolutions, rules, policies, and practices that exceeded the authority granted to municipalities under Florida law, Defendant, acting under color of state law, deprived Plaintiff of constitutionally protected property interests in violation of 42 U.S.C. § 1983.

185. Plaintiff alleges that Defendant's regulatory scheme forces Plaintiff to choose between exercising the property rights and conducting the farm operations recognized and protected by Florida law, or complying with municipal enactments that Plaintiff alleges Defendant lacked authority under Florida law to adopt, maintain, or enforce. As a direct and proximate result of Defendant's adoption, maintenance, and continued reliance upon those enactments, Plaintiff has suffered and continues to suffer loss of productive agricultural use, delay in establishing and

41

expanding farm operations, increased regulatory costs and burdens, diminished property value, lost agricultural income, lost business opportunities, and other continuing economic damages.

## VI. PRIOR STATE PROCEEDINGS

186. The Farm has been the subject of prior proceedings between Plaintiff and Defendant, including Case Nos. 2014-CA-004014, 2018-CA-001951, 2021-CA-000352, and 2023-CA-005302 in the Tenth Judicial Circuit, Polk County, Florida.

187. Those proceedings arose from disputes occurring at different times and under different factual circumstances, including zoning enforcement, vegetation enforcement, agricultural activities, and related municipal regulation. None adjudicated the claims asserted here concerning Defendant's authority to adopt, maintain, or enforce the challenged LDRs, ordinances, resolutions, rules, policies, and practices in light of the statutory limitations imposed by Florida law.

188. Plaintiff alleges that the claims asserted here arise from Defendant's current LDRs, ordinances, resolutions, rules, policies, and practices, together with Defendant's continuing assertion of municipal authority that Florida law never granted, or otherwise limited, preempted, or excluded. Such continuing conduct includes conduct occurring since February 13, 2024; the expiration of Resolution No. 15-1153 on August 6, 2025; Defendant's continued assertion of municipal authority following that expiration; continuing stormwater assessments, vegetation-enforcement authority, permitting requirements, and other ongoing regulatory burdens affecting the Farm.

189. Plaintiff alleges that the challenged LDRs, ordinances, resolutions, rules, policies, and practices are void ab initio because they exceeded the legislative authority delegated to Defendant under Florida law at the time of their adoption. Plaintiff further alleges that continuing enforcement of those enactments gives rise to new and continuing constitutional injuries independent of the prior proceedings.

190. Plaintiff further alleges that, in 2022, 2024 and again in 2026, FDACS verified Plaintiff's implementation of applicable Best Management Practices. Notwithstanding those verifications, Defendant continued to maintain, apply, and enforce the challenged LDRs, ordinances, rules, policies, and practices and continued asserting that Plaintiff must obtain zoning, land-

development, permitting, or other municipal approval to operate the Farm, thereby causing new and continuing constitutional injuries.

191. Plaintiff's present challenge is directed to Defendant's asserted authority to adopt, maintain, apply, and enforce the challenged LDRs, ordinances, resolutions, rules, policies, and practices against the Farm notwithstanding the limitations imposed by Florida law, as described in Section I.D above. Plaintiff challenges both Defendant's continuing assertion of municipal authority and the resulting permitting demands, assessments, restrictions, enforcement activities, and other regulatory burdens imposed on the Farm.

192. Defendant's challenged LDRs, ordinances, resolutions, rules, policies, and practices constitute official municipal policy adopted, maintained, and enforced by Defendant acting through its governing body and officials possessing final policymaking authority under Florida law. Plaintiff alleges that the constitutional injuries asserted in this action were directly caused by those official municipal enactments and policies, and not by isolated, unauthorized, or discretionary acts of individual municipal employees.

## COUNT I
### REGULATORY TAKING
### (U.S. Const. amend. V; 42 U.S.C. § 1983)

193. Plaintiff re-alleges and incorporates by reference Paragraphs 1 through 192 as though fully set forth herein.

194. Florida law repeatedly recognizes and protects existing farms receiving agricultural classification under § 193.461. Defendant's Land Development Regulations, however, simultaneously treat Plaintiff's Farm as an agricultural use requiring municipal permission or subject to prohibition unless approved through the City's zoning process. Those legal positions cannot coexist.

195. By requiring municipalities to protect existing farms from interference arising from adjacent residential development under § 163.3163, the Legislature necessarily recognized that such farms constitute lawful agricultural uses rather than unlawful or conditional uses subject to municipal veto.

43

196. Plaintiff, as Trustee, possesses constitutionally protected property interests under Florida law in the Farm's use, operation, agricultural production, agricultural classification, development, and economic utilization, including those property interests recognized and protected by Florida's statewide agricultural and environmental regulatory framework.

197. Defendant, acting under color of state law through its governing body and officials possessing final policymaking authority under Florida law, has adopted, maintained, and enforced LDRs, ordinances, the allegedly void Resolution No. 15-1153, rules, policies, and practices affecting the Farm, including zoning restrictions, conditional-use requirements, livestock restrictions, vegetation-enforcement provisions, permitting requirements, stormwater assessments, and related land-use controls.

198. Plaintiff alleges that Defendant's regulatory scheme prohibits, restricts, conditions, or substantially interferes with bona fide commercial agricultural activities conducted on the Farm, including activities governed by applicable FDACS-adopted Best Management Practices and other agricultural activities recognized and protected by Florida law.

199. Plaintiff alleges that compliance with Defendant's regulatory scheme would prevent the Farm from operating as a bona fide commercial agricultural enterprise. Conversely, conducting farm operations recognized and protected by Florida law subjects Plaintiff to continuing enforcement, permitting requirements, citations, penalties, and daily fines.

200. Plaintiff alleges that Defendant's regulatory scheme therefore forces Plaintiff to choose between foregoing the lawful agricultural use of the Farm and exposing the Farm and its operations to continuing municipal action under a prohibition Defendant never had authority to adopt.

201. Plaintiff further alleges that Defendant's Land Development Regulations, ordinances, resolutions, rules, and policies, individually and collectively, leave the Farm without any lawful economically beneficial agricultural use, constituting a categorical taking under *Lucas v. South Carolina Coastal Council*, 505 U.S. 1003 (1992).

202. When Defendant adopted those Land Development Regulations in 2012, Florida law had already confirmed that municipal authority never extended to regulations governing the qualifying agricultural activities at issue in this action, rendering them void from adoption rather than merely

44

from subsequent enforcement. Plaintiff is aware of no background principle of Florida property or nuisance law that independently prohibits those agricultural activities.

203. In the alternative, Plaintiff alleges that, if the Court concludes some economically viable use remains, Defendant's regulatory scheme nevertheless effects a taking under the factors identified in *Penn Central Transportation Co. v. City of New York*, 438 U.S. 104 (1978). Plaintiff alleges that the regulatory scheme has had a substantial economic impact on the Farm, has substantially interfered with Plaintiff's distinct investment-backed expectations of operating the Farm as a bona fide commercial agricultural enterprise, and constitutes governmental action regulating agricultural activities over which Plaintiff alleges Florida law has withdrawn, limited, preempted, or otherwise excluded municipal authority.

204. Plaintiff alleges that Defendant possesses no lawful legislative authority to prohibit, restrict, or condition agricultural activities over which Florida law has withdrawn, limited, preempted, or otherwise excluded municipal authority. Section 163.3162(3)(a) forecloses not merely one form of that authority, but "any of its powers" — leaving no permitting requirement, conditional-use approval, rezoning, variance, development order, resolution, or other municipal mechanism through which Defendant could ever have lawfully possessed that authority. Accordingly, Defendant cannot create or expand such authority through permitting requirements, conditional-use approvals, rezoning, variances, development orders, Resolution No. 15-1153, or any other municipal approval process.

205. Defendant's adoption, maintenance, and enforcement of the challenged Land Development Regulations, ordinances, resolutions, rules, policies, and practices have deprived Plaintiff of the use, enjoyment, operation, development, and economic value of the Farm, constituting a taking of Plaintiff's private property for public use without just compensation, in violation of the Fifth and Fourteenth Amendments to the United States Constitution.

206. As a direct and proximate result of Defendant's adoption, maintenance, and enforcement of the challenged Land Development Regulations, ordinances, resolutions, rules, policies, and practices, Plaintiff has suffered and continues to suffer damages, economic losses, diminution in value, loss of productive use, and other injuries in an amount to be determined at trial.

WHEREFORE, Plaintiff requests that the Court enter judgment in his favor and against Defendant; award all compensatory damages recoverable under 42 U.S.C. § 1983, including any just

compensation required by the Fifth Amendment for any taking of Plaintiff's property established in this action, in an amount to be determined by the Court or the trier of fact; award costs as permitted by law; and grant such other and further relief as the Court deems just and proper.

## COUNT II
### VIOLATION OF PROCEDURAL AND SUBSTANTIVE DUE PROCESS
### (U.S. Const. amend. XIV; 42 U.S.C. § 1983)

207. Plaintiff re-alleges and incorporates by reference Paragraphs 1 through 192 as though fully set forth herein.

208. Florida law repeatedly recognizes and protects existing farms receiving agricultural classification under § 193.461. Section 163.3163 requires municipalities to protect such farms from interference arising from adjacent residential development. Plaintiff alleges that the Legislature would not impose that obligation upon municipalities if those same municipalities retained authority to treat those farms as unlawful uses requiring municipal permission. Defendant's contrary regulatory scheme is arbitrary and irrational because it is incompatible with the statutory framework established by the Legislature.

209. Plaintiff, as Trustee, possesses constitutionally protected property interests under Florida law in the ownership, use, operation, agricultural production, agricultural classification, development, and economic utilization of the Farm, including those property interests recognized and protected by Florida's statewide agricultural and environmental regulatory framework.

210. Defendant, acting under color of state law through its governing body and officials possessing final policymaking authority under Florida law, has adopted Land Development Regulations, ordinances, Resolution No. 15-1153, rules, policies, and practices that prohibit, restrict, condition, or otherwise burden agricultural activities conducted on the Farm.

211. Plaintiff alleges that Defendant continues to assert municipal authority over agricultural land, farm operations, buildings, and infrastructure notwithstanding Florida statutes that define, limit, withdraw, preempt, or exclude such authority.

212. Plaintiff further alleges that Defendant continues to require zoning approval, conditional-use approval, development approval, permits, vegetation compliance, and other municipal authorization as prerequisites to conducting farm operations notwithstanding statutory limitations that Plaintiff alleges deprived Defendant of authority to impose those requirements.

213. Plaintiff alleges that Defendant's continued assertion of authority is arbitrary and irrational because it is based upon Land Development Regulations, ordinances, resolutions, rules, policies, and practices that exceed the authority delegated to Defendant under Florida law. Defendant's adoption of those enactments therefore deprives Plaintiff of property without due process of law.

214. Plaintiff further alleges that Defendant's regulatory scheme places the Farm in an impossible position by prohibiting or conditioning the agricultural activities, buildings, structures, and infrastructure necessary to establish, maintain, expand, and operate a bona fide commercial farm while simultaneously imposing penalties and other regulatory consequences for engaging in those same activities without the municipal approvals Defendant allegedly lacks authority under Florida law to require.

215. Plaintiff further alleges that Defendant's adoption of Land Development Regulations, ordinances, resolutions, rules, policies, and practices exceeding its lawful authority deprives Plaintiff of the lawful use, operation, development, and enjoyment of the Farm and substantially interferes with Plaintiff's constitutionally protected property interests.

216. Plaintiff further alleges that Defendant's legislative authority is determined at the moment the challenged Land Development Regulations, ordinances, resolutions, rules, policies, and practices were adopted, and that Defendant's adoption without preserving the statutory limitations established by Florida law continues to deprive Plaintiff of property without due process of law.

217. Plaintiff alleges that Defendant deprived Plaintiff of procedural due process by requiring zoning approval, conditional-use approval, development approval, permits, and other municipal authorizations as prerequisites to conducting farm operations recognized and protected by Florida law, notwithstanding statutory limitations that Plaintiff alleges had already withdrawn, limited, preempted, or excluded Defendant's authority to impose those requirements. Plaintiff further alleges that procedural due process cannot be satisfied by requiring compliance with procedures Defendant lacked lawful authority under Florida law to impose.

218. Plaintiff further alleges that Defendant deprived Plaintiff of substantive due process by adopting Land Development Regulations, ordinances, Resolution No. 15-1153, rules, policies, and practices exceeding its lawful authority under Florida law. Plaintiff alleges that Defendant's continued assertion of municipal authority over agricultural land, farm operations, buildings, and

47

infrastructure that Florida law defines, limits, withdraws, preempts, or excludes is arbitrary, irrational, and unrelated to any legitimate exercise of municipal authority.

219. Plaintiff alleges that Defendant's conduct challenged in this Count is legislative: the adoption of LDRs, ordinances, and Resolution No. 15-1153 by Defendant's governing body, distinguishable from the executive action *Mohit I* and *Mohit III* addressed.

220. As a direct and proximate result of Defendant's adoption of the challenged ordinances, Land Development Regulations, resolutions, rules, policies, and practices, Plaintiff has suffered and continues to suffer economic injury, loss of productive use, interference with constitutionally protected property interests, and other damages.

221. Defendant's adoption of the challenged ordinances, Land Development Regulations, resolutions, rules, policies, and practices deprived Plaintiff of procedural and substantive due process under the Fourteenth Amendment to the United States Constitution.

WHEREFORE, Plaintiff requests that the Court enter judgment in his favor and against Defendant; award all compensatory damages recoverable under 42 U.S.C. § 1983 for injuries resulting from Defendant's deprivation of Plaintiff's rights secured by the Fourteenth Amendment through the adoption of Land Development Regulations, ordinances, resolutions, rules, policies, and practices alleged to exceed Defendant's authority under Florida law, in an amount to be determined by the Court or the trier of fact; award costs as permitted by law; and grant such other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all issues so triable pursuant to Federal Rule of Civil Procedure 38(b).

Respectfully submitted,

*B. Mohit Owl*

Benedict Mohit, Pro Se
Individually and as Trustee for
the Gita Nagassar Mohit Family Trust
1520 Sunrise Plaza Drive
Clermont, Florida 34714
dvmohits@gmail.com

48

Tel.: 407-579-8337

Service of process will be effected pursuant to Federal Rule of Civil Procedure 4.

49